IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RUSSELL LANE, JR., § | |
|     Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 1:16-cv-00473-SS |
| § | |
| ROUND ROCK POLICE OFFICER B.R. § | |
| RECHTFERTIG, in his official and § | |
| Individual Capacity, ROUND ROCK POLICE § | |
| OFFICER J.P. KEYES, in his official and § | |
| Individual Capacity, ROUND ROCK POLICE § | |
| OFFICER A.J. RIVERA, in his official and § | |
| Individual Capacity, ROUND ROCK POLICE § | |
| DEPARTMENT, TEXAS AND CITY OF § | |
| ROUND ROCK § | |
|     Defendants. § | |

**DEFENDANTS' MOTION AND BRIEF TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants Round Rock Police Officer B. R. Rechtfertig, Round Rock Police Officer J. P. Keyes, Round Rock Police Officer A. J. Rivera, Round Rock Police Department, Texas and City of Round Rock and file this their Motion to Dismiss for Failure to State a Cause of Action and would show unto the Court as follows:

**I. SUMMARY**

The Amended Complaint suffers from many of the vices of its predecessor and fails to provide sufficient factual details to adequately explain the circumstances involved in the incident that is the subject of this lawsuit against these Police Officers. Without adequate factual detail, Plaintiff's conclusory assertions are insufficient to state a claim of relief that is plausible on its face under governing standards. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the

individual Defendants are entitled to qualified immunity and hereby seek dismissal on the basis of same because Lane has failed to override application of the doctrine.

Moreover, any state law claims against the individual defendants must be dismissed because there is no private cause of action for damages under the Texas Constitution and the claims are barred by §101.106 of the Texas Tort Claims Act. Alternatively, if the Court does not dismiss the case at this stage, the Court should require Plaintiff to file a Reply pursuant to Fed. R. Civ. P. 7(a) to make a factually specific Reply to the detailed assertions of qualified immunity made by Defendant Officers pursuant to the procedures established by the Fifth Circuit in *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995).

## II. IDENTIFICATION OF LIVE PLEADING & SUMMARY OF CLAIMS

Plaintiff's live pleading is the Complaint filed herein September 7, 2016 (Doc. 26) ("the Amended Complaint"). The parties agreed by stipulation Defendants had until October 5, 2016 to respond. (Rec. Doc. 27). The claims Plaintiff asserts jointly against all Defendants are summarized as follows:

1. Alleged violations of the Fourth Amendment. (Amended Complaint ¶¶35-65);

2. Alleged violations of the Fifth Amendment for inverse condemnation. (Amended Complaint ¶¶66-72);

3. Alleged conversion. (Amended Complaint ¶¶73-77);

4. Alleged negligent infliction of emotional distress. (Amended Complaint ¶¶78-83); and

5. Alleged claims for respondent superior liability. (Amended Complaint ¶¶84-87).

When Plaintiff seeks relief against all Defendants, Plaintiff does so alleging that at all relevant times, the Police Officers were employed and acting as Round Rock Police Officers; as

agents, servants, and representatives of the department and performing their employment under the cover of state law. (Amended Complaint ¶¶13-15).

### III. LEGAL STANDARD FOR DISMISSAL

Defendants move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes certain defenses to be presented via pretrial motions. A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. The Federal Rules of Civil Procedure require that each claim in a complaint include "a short and plain statement ... showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 us. at 570).

Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court must accept as true all well pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In deciding a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). "The Supreme Court recently expounded upon the *Twombly* standard, explaining that '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzalez*, 577 F.3d at 603 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "It follows, that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id*.

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id*. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV. ARGUMENT AND AUTHORITIES

### A. Immunity of Individuals for Federal Claims

All of the individual Defendant Officers assert that at all times at issue, they did so in their official capacities as stated above, and they acted in a good faith performance of their official discretionary authority. There is no conflict about this really. (Amended Complaint ¶¶13-15). The individual Defendant Officers did not knowingly violate any of Plaintiff's clearly established rights. All of the individual Defendant Officers are entitled to official immunity and qualified immunity as to any causes of action asserted against them. *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013); *Telhorster v. Tennell*, 92 S.W.3d 451, 460-461 (Tex. 2002).

In order to overcome the individual immunity of these Defendants, Plaintiff bears the burden of showing that a public official facing the same or substantially similar circumstances would have known, in view of governing law, that their conduct violated a clearly established right. *Hogan*, 722 F.3d at 735.  In the first instance, Plaintiff's allegations are not sufficient to establish a civil rights violation. Therefore, a reasonable public official facing the same or similar circumstances would not have known that their conduct violated a clearly established right. For these reasons, Plaintiff has failed to penetrate the qualified immunity of the individuals. *Id*. Accordingly, the claims against the individual Defendants fail and must be dismissed.

B. **Failure of Unreasonable Seizure Claim**

As tragic as the outcome may have been, the actions of the officers in using force were justified given the circumstances.  There is no evidence that the shooting of the animal was without good cause.  The officers were caught off guard and reacted.  Therefore, the shooting was justified. *See Vasquez v. City of San Antonio*, 2006 WL 1539636 (Tex. App.—San Antonio, 2006) (not recorded in S.W.3d) (officer justified shooting pit bull who cornered him aggressively).  A similarly situated officer could have reasonably believed the conduct of these officers to be lawful, therefore, qualified immunity should apply and dismissal of these claims against them in their individual capacity appropriate. *See Shankle v. Texas City*, 885 F. Supp. 996, 1006 (N.D. Tex. 1995); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The cases cited to support his Fourth Amendment claim in the Plaintiff's Original Complaint, *San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005), *Grant v. City of Houston,* 625 Fed. Appx. 670 (5th Cir. 2015) are clearly distinguishable from the present controversy.  In *San Jose Charter of the Hells Angels Motorcycle Club,* the officers who executed the search warrants had over a week to plan for the

operation and were fully aware of the presence of the dogs that ultimately were shot. These officers did not have any such luxury. In *Grant*, the court determined that the plaintiff failed to rebut the officers' assertion of qualified immunity for shooting "Buster" because he surprised the officers. *Id*. at 676. This case deserves a similar outcome to *Grant*.

**C.     No Claim for Wrongful Taking**

Generally, a cause of action for "wrongful taking" under the Fifth Amendment, requires that a unit of government is "taking" a property for its possession and/or use. *See Simmons v. Loose,* 418 N.J. Super 206 (Superior Ct. N.J. 2011). The takings clause does not apply when property is retained or damaged as the result of some other government power other than eminent domain. *See Johnson v. Manitowoc County*, 635 F.3d 331 (7th Cir. 2011) *citing Bennis v. Michigan*, 516 U.S. 442, 452 (1996). In the present action, the alleged "taking" or "seizure" claim under the takings clause is unavailable because the damage occurred incident to a justified use of the police powers. *Id*. Accordingly, the claims fail.

**D.     No Claim for Municipal Liability for Federal Claims**

   1.     Basic Facts Plaintiff Must Plead Against City.

It is well settled that the Defendant City cannot be held liable for civil rights violations under a theory of Respondeat Superior. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978). The Defendant City cannot be sued and subjected to damages unless its official policy or custom caused the Plaintiff to be deprived of a federally protected right. *Board of County Commissioners v. Brown,* 520 U.S. 397, 403 (1997). Therefore, in order to support a claim based on the existence of a custom or policy, Plaintiff must plead facts to show that (1) a policy or custom existed; (2) governmental policy makers actually or constructively knew of its existence; (3) a Constitutional violation occurred; and (4) the custom or policy served

as the moving force behind the violation. *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996). Plaintiff's description of the policy or custom and its relationship to the underlying Constitutional violation cannot be conclusory; it must contain specific facts. *Spiller v. City of Texas City,* 130 F.3d 162, 167 (5th Cir. 1997). Plaintiff must establish that his claims are based on Defendant's official policy, not the policy of an individual official. *Bennet v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984). Here, there is no factual background or basis to support a claim against the City.

      2.      <u>Respondeat Superior Claims Fail</u>.

Despite *Monell's* prohibition of a respondeat superior basis of liability, Plaintiff's Amended Complaint claims respondeat superior to establishing liability against the City. (Amended Complaint ¶¶84-87). Plaintiff complains about the acts of the individuals, but he tries to charge those acts to the City. *Monell*, 436 U.S. at 694. Although he asserts his constitutional claims against the City and the individual Defendants, he makes no mention of any involvement of City policymakers.

      3.      <u>Plaintiff Does Not Identify a Policymaker</u>.

A plaintiff may not simply assert conclusory allegations about a policymaker, and then contend that such allegations are sufficient to withstand a Rule 12(b)(6) Motion to Dismiss. Here, Plaintiff does not even attempt to identify a policymaker. To avoid dismissal, the Plaintiff must plead specific facts rather than conclusory allegations. Moreover, he fails to establish de facto policies or other avenues to proceed. Conclusory allegations simply are insufficient to withstand a Motion to Dismiss. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992); *Chiras v. Miller*, 432 F.3d 606, 611 (5th Cir. 2005). In this case, Plaintiff simply makes nothing but conclusory allegations attempting to equate the actions of the individual Defendants with

actions that Plaintiff wants to charge to the City. However, as Courts have recognized, merely because an official has discretion in the exercise of the particular function does not give rise to Municipal liability. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481-82 (1986). One is generally not a policy maker unless the governmental entity has delegated exclusive policy making authority to that employee and cannot review his or its decisions. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988).

      4.      <u>Plaintiff Does Not Identify a Policy</u>.

Plaintiff asserts no specific facts to show that any City policy or custom whatsoever was involved in or caused a violation of civil rights. Other than conclusions, Plaintiff does not provide specific non-conclusory facts to show a widespread custom that was involved or caused a violation of civil rights. Plaintiff has not (and cannot) point to any specific existing policies or customs that caused a violation of a Constitutional right. Plaintiff therefore makes formulaic incantations about policies—trying to equate alleged widespread practices as being the equivalent of existing formally adopted policies. Moreover, Plaintiff provides no specific factual allegation in any event of a Constitutional violation that was ratified or condoned by a City policymaker.

**E.**    <u>**State Law Claims**</u>

      1.      <u>Election of Remedies</u>.

Plaintiff also sues the City and the individual Defendants for state law claims as an initial matter. The City of Round Rock asserts that the individual Defendants are now entitled to immunity from any state law claims pursuant to the election of remedies provisions of §101.106(E) of the Texas Tort Claims Act. Accordingly, all state law claims against the individual defendants are barred.

2. <u>General Presumption of Sovereign Immunity for City of Round Rock</u>.

Under Texas law, a governmental entity defendant is presumed to have sovereign immunity, and sovereign immunity is presumed to continue unless there is a clear and unambiguous expression of the Legislature's intent to waive immunity. *Wichita Falls State Hospital v. Taylor,* 106 S.W.3d 692, 696 (Tex. 2002); *Federal Sign v. Texas Southern University,* 951 S.W.2d 401, 405 (Tex. 1997); *Duhart v. State,* 610 S.W.2d 740, 742 (Tex. 1980). In addition to the Supreme Court case law, the Legislature has amended the Code Construction Act to further clarify the presumption of sovereign immunity. Government Code §311.034 provides as follows:

> "§311.034. Waiver of Sovereign Immunity
>
> In order to preserve the Legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language .... Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."

The Texas Supreme Court has held that any claim against a governmental entity in the nature of a tort can only be brought pursuant to the Texas Tort Claims Act. When the Supreme Court made this holding, it expressly stated:

> "Because the Tort Claims Act is the only, albeit limited, avenue for common law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are presumed to be 'under the Tort Claims Act ...'."

*Mission Consolidated I.S.D. v. Garcia,* 253 S.W.3d 653, 659 (Tex. 2008). Thus, in order for this Court to have jurisdiction over the claims, Plaintiff must demonstrate that his claim meets the requirements under the Texas Tort Claims Act in order to show a clear and unambiguous waiver of sovereign immunity. Because Plaintiff cannot establish the necessary elements of his state claims against the City, the City's immunity is not waived.

3.  The City's Immunity is Not Waived for Intentional Torts.

It is clear that in order to find a waiver of immunity for a tort cause of action against the City, Plaintiff must look to the Tort Claims Act located at Chapter 101 of the Texas Civil Practice and Remedies Code, known as the Tort Claims Act. Section 101.057 of the Act expressly states:

> "This chapter does not apply to a claim: ... arising out of assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities." (Emphasis added).

Conversion is an intentional tort. Regardless of any assertion Plaintiff makes that the same conduct that is intentional for purposes of his civil rights claim is somehow negligent for purposes of a tort claim, the Court may determine as a matter of law whether the nature of the act that is the basis of the suit is intentional or negligent. Labels Plaintiff affixes to acts that he may try to claim, as negligence do not bind the Court. *See generally: Texas Department of Public Safety v. Petta,* 44 S.W.3d 575, 580 (Tex. 2001); *Harris County v. Cabazos,* 177 S.W.3d 105, 109 (Tex. App.—Houston [1st Dist.] 2005); *Delaney v. University of Houston*, 835 S.W.2d 56, 60 (Tex. 1992). Therefore, if Plaintiff was to label the actions of the Officers as negligence, such labeling is insufficient to invoke a waiver of the City's sovereign immunity and insufficient to avoid the bar to liability set forth in Tex. Civ. Prac. & Rem. Code §101.057. Clearly, such conduct is characterized as intentional conduct and not actionable here.

4.  Failure of Punitive Damage Claims Against City.

There is no doubt the City is a governmental entity. Regardless of whether punitive damages are sought against the City under federal law or under Texas law, such claims fail. It is well settled that governmental entities are not subject to punitive damages. *See: Newport v. Fact Concerts,* 453 U.S. 247, 259-260 note 21 (1981). *See also:* Tex. Civ. Prac. & Rem. Code

§101.024—which expressly states the Tort Claims Act, does not apply to authorize exemplary damages. *See also: Gay v. State,* 730 S.W.2d 154, 158 (Tex. App.—Amarillo 1987, *no history); Wichita Falls State Hospital v. Taylor,* 106 S.W.3d 692, 701-702 (Tex. 2003). In *Taylor,* the Texas Supreme Court recognized that no Texas statute waives the government's sovereign immunity so as to allow a recovery of exemplary damages.

Any claims for exemplary or punitive damages fail and must be dismissed.

5.  **No Recovery for Loss of Companionship for Death of Pet**

In evaluating the Plaintiff's claims for damages here, the Court should seek guidance from state law, even for any federal claims. To that end, assuming liability, Plaintiff's damages claims are limited by the ruling of the Texas Supreme Court which has found a person may not recover non-economic damages for loss of companionship of a pet. *Strickland v. Medlen*, 397 S.W.3d 184 (Tex. 2013). Further they may not recover for mental anguish damages resulting from damage to personal property. *City of Tyler v. Likes*, 962 S.W.2d 489 (Tex. 1998); *Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554 (Tex. App.—Austin 2004, *no pet.*).

6.  **No Claim for Conversion**

Conversion is an intentional tort. *See Ramon v. Dow,* 2009 WL 508427 * 2 (Tex. App.—Houston [14th Dist.] 2009). Thus, there is likely no waiver of immunity for the claim. *See:* Tex. Civil Prac. & Rem. Code §101.025. Moreover, the allegations here do not establish the elements required to prove a conversion claim. Those elements include the control over another person's property. *See Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 446 (Tex. 1971). The City does not have control and is not preventing the possession of Bullet under the circumstances of this case. Moreover, the Texas Supreme Court has noted that there are times when damage to private property by the state is a justified use of its police powers. *Steele v. City of Houston,* 603 S.W.2d

786, 792 (Tex. 1980)(citing as an example with apparent approval the shooting of a mad dog in the street by public authorities). This action is not a forfeiture claim as the property, the pet "Bullet", cannot be returned to its owner.

As with any claim under the takings clause, reasonable use of the police powers that incidentally damages personal property is not actionable. Such claims if any should lie under the Fourth Amendment.

**7.     No Claim for Negligent Infliction of Emotional Distress**

The claim for negligent infliction of emotional distress fails, as there is no actionable claim in Texas for the negligent infliction of emotional distress. *See Boyles v. Kerr*, 855 S.W.2d 593 (Tex. 1993). Nor is there any other duty such damages may attach here.

**V. ALTERNATE REQUEST FOR A RULE 7 REPLY
PURSUANT TO FED. R. CIV. P. 7(a)**

**A.     Overview of Plaintiff's Claims**

As set forth in the foregoing sections of this Motion, Plaintiff utterly fails to plead sufficient facts to establish any of his claims against the individual Defendants. He certainly has not pled sufficient facts to penetrate the immunity of the individual Defendants. However, in the event the Court generously allows Plaintiff an opportunity to proceed with the case, he should be required to provide adequate descriptions that not only meet the standards of *Iqbal*, but that would also show that the immunity defenses of the individuals would fail, if Plaintiff's factual allegations are taken as true.

**B.     Requirements for Factually Specific Allegations**

When as here, public officials such as the individuals Defendants have pled the affirmative defense of immunity in their Answers; the District Court should require the Plaintiff to reply to that defense in detail. *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995). The

United States Supreme Court approves of the same procedure. *Crawford-El v. Britton*, 523 U.S. 574, 597-598 (1998). By definition, a Reply pursuant to Fed. R. Civ. P. 7(a) must be tailored to the assertion of qualified immunity and fairly engage the Defendant's allegations. *Schultea*, 47 F.3d at 1433. If the Court denies the Motion to Dismiss, the Plaintiff should be required to re-plead.

C.  **Defendants' Specific Factual Assertions of Immunity**

Each of the individual Defendant Police Officers have asserted their immunity defense with specificity as set forth in paragraphs 3.01-3.20 of the Answer as follows:

> "**3.01**  Pursuant to the procedures set forth in *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995), Defendants hereby set forth some factually specific assertions in connection with Defendants' official immunity and/or qualified immunity defense.  This procedure is also a procedure approved by the United States Supreme Court.  *Crawford-EI v. Britton*, 523 U.S. 574, 597-598 (1998).  In connection with this, Defendants also request that the Court require the Plaintiff to file a reply pursuant to Federal Rule of Civil Procedure 7(a).
>
> "**3.02**  On May 30, 2014, Officer Rechtfertig was on duty for the Round Rock Police Department.  Similarly, Officer Rivera and Sgt. Keyes were also on duty for the Round Rock Police Department.  At all times in this case, they were in uniform and acting with legal authority.  All hold peace officer's licenses issued by the State of Texas.
>
> "**3.03**  At approximately 8:51 a.m., on May 30, 2014, Officer Rechtfertig was dispatched to a residential alarm call at 1713 Parkside Circle, Round Rock, Texas.  He arrived at approximately 9:01 a.m. and began checking the exterior of the premises for any signs of a possible criminal offense.  While he checked the residence, he observed an exterior video camera on the front side of the property and on the rear side of the residence facing the back yard.  This officer looked into the back yard and observed some type of a chain link material inside the back yard.  He could not confirm the purpose of the chain link at that time.  He did not observe any positive indications there was a dog present such as a food bowl, dog toys, or any other such signs.  He did not observe any beware of dog signs.
>
> "**3.04**  In addition to his visual observations, Officer Rechtfertig had not been informed of any "alerts" from dispatch that there was an aggressive dog that lived at the residence.

**"3.05**   Officer Rechtfertig did not observe any signs of forced entry on any of the windows to the property.  According to the report from dispatch, the alarm had been activated at the front door.  To investigate this, Officer Rechtfertig opened the glass decorative front door.  He then observed that the primary wood door was ajar about two inches.  He was concerned about a possible criminal offense in progress.  Pursuant to his training, experience, and department policy, he requested two additional units to come to the residence to help him clear it at 9:05 a.m.  While waiting for these units, he opened the front door all the way to have a better visual for any intruders.  Officer Rechtfertig then shouted and announced his presence continuously until responding units arrived about three minutes later.  He remembers that he made approximately five to ten announcements.  Officer Rechtfertig stayed at the front door and did not observe any signs of movement or hear anything that indicated anyone or anything was inside.

**"3.06**   Backup Officers Rivera and Keyes arrived on scene.  At about 9:10 a.m., the officers entered the home and began to clear the interior of the residence with handguns drawn.  Officer Rechtfertig was in the lead; Officer Rivera was behind him with Sgt. Keyes trailing the other two officers.  They first cleared the living room. The kitchen was cleared next, and then all three officers progressed to the south side of the residence.  The officers came to a "T" where the hallway split left and right.  Still in the lead, Officer Rechtfertig could visually clear the bedroom to the left partially (the east bedroom).  He decided to enter that room first with Officer Rivera covering the other side of the hallway (the west side).  At that point, Officer Rechtfertig did not know if there was a bedroom at the other end of the hall nor did he have any visual angle to see that direction.  He entered the left (east) bedroom.  Then he heard a loud growl behind him.

**"3.07**   Officer Rivera then shouted "dog" and Officer Rechtfertig heard handgun rounds being shot.  Officer Rechtfertig turned around and saw a very large black Rottweiler approximately three feet behind him.  The dog was in the hallway facing towards Officer Rivera growling in an aggressive posture.

**"3.08**   Officer Rechtfertig then observed white smoke coming from the front of the Rottweiler while he heard handgun rounds being fired.  It appeared that the rounds were possibly going into the Rottweiler, but Officer Rechtfertig perceived that the rounds did not deter the dog's aggressive demeanor as he continued to move towards Officer Rivera.

**"3.09**   Officer Rechtfertig looked above the Rottweiler, saw part of the living room, and could see that there were no other people in his line of sight.  Given that factor, he shot at the midsection of the Rottweiler.  Based on the shots, the dog finally appeared to stop his forward movement.  Officer Rechtfertig believed that the dog was still alive and growling.  The Rottweiler expired subsequently.

**"3.10**   After the officers were certain that the threat had passed, they continued to clear the residence.  There were no signs of forced entry.

**"3.11**   Given the totality of the circumstances they faced, the officers reasonably perceived there was danger and reacted reasonably.  At all relevant times on the date of the incident, the Defendants were acting in their role as police officers from the Round Rock Police Department.  At all relevant times, they were identifiable as peace officers.

**"3.12**   Defendants did not at any time submit information in any report, documentation, affidavit, or in testimony which they knew was incorrect or which omitted any material information.

**"3.13**   At all times relevant to the allegations against these Defendants, they were acting in a good faith performance of their official discretionary authority as police officers, and did not knowingly violate any of Plaintiff's clearly established rights.  At all relevant times, Defendants acted as a reasonable police officer would have acted facing the same or substantially similar circumstances and did not commit any act or omission that a reasonable peace officer would have known was in violation of Plaintiff's clearly established rights.

**"3.14**   According to representatives of the security company, Monitronics, the "homeowner" disarmed his house alarm at 8:53 a.m. from a mobile or keypad with a proper cancel code.  According to company policy, the alarm company cancels an alarm response to the police only if they receive a verbal authorization from the key holder, which they did not in this case.

**"3.15**   Officer Rivera arrived at the scene at approximately 9:08 a.m. as an additional backup officer for a residence alarm.  Officer Rechtfertig was already at the residence and had observed the front door to be ajar.  The front of the home sat west.  Pursuant to department policy, Officer Rechtfertig had requested two additional officers to come to the residence and help clear it and be on the lookout for unknown subjects that may have illegally or forcibly entered the home.

**"3.16**   Officer Rivera positioned himself next to Officer Rechtfertig, who advised him that he had already announced his presence multiple times.  Next, Sgt. Keyes arrived on scene and Officer Rechtfertig, Officer Rivera, and Sgt. Keyes made entry into the home through the front door with their service weapons drawn.

**"3.17**   Officer Rechtfertig entered first.  They cleared the living room and kitchen.  When they reached the "T" hall, Officer Rechtfertig entered the bedroom to the left on the east side of the home.  Officer Rivera swept to right to left to ensure there were no immediate threats following in behind Officer Rechtfertig in the bedroom.  As he looked right, he observed the hallway ended into an open bedroom at the west end of the home approximately ten to twelve feet from his

position.  He observed in the bedroom a very large dog, which he recognized to be a Rottweiler.

"**3.18**   The Rottweiler then stood from its lying position on the couch and gave a very aggressive growl as it began to quickly charge towards the officers bearing its teeth.  He did not observe there to be any other person or animal between him and the wall behind the dog.  As soon as he saw the dog, he announced "dog" to alert the other officers.

"**3.19**   Officer Rivera was in fear for his safety and the safety of the officers on the scene and fired his weapon at the dog when it reached the entry to the bedroom where it was located approximately ten to twelve feet away from him.  The dog remained steady in his charge, continuing aggressively towards the officers.

"**3.20**   Officer Rivera fired his weapon at least two more times before stepping out of the path of the dog back into the living room they had walked through.

"**3.21**   The dog continued towards Officer Rechtfertig who was still in its direct path.  Officer Rivera fired his weapon three more times into the left side of the dog to stop its charge before it finally came to a rest.  The dog came to rest where Officer Rivera was initially standing when he saw it in the bedroom at the end of the hall.  The dog had traveled approximately ten to twelve feet while taking steady handgun fire.

"**3.22**   As they cleared the house, Sgt. Keyes was covering the north bedroom and the unknown portion of the residence when he heard Officer Rivera announce "dog" and he heard growling and snarling followed by four shots.  Because of the loud noise and echo, Sgt. Keyes temporarily lost his hearing, hearing only a ringing in his ears.

"**3.23**   Officer Rivera retreated from the hallway and made contact with Sgt. Keyes.  Sgt. Keyes withdrew into the kitchen to allow Officer Rivera to retreat further.   Sgt. Keyes observed a large black/brown Rottweiler landing in the hallway after coming down from an elevated position in the westernmost bedroom.  He observed the canine charge eastbound in the hallway towards the officers.  After what he believed had been seven shots fired, the canine came to rest in the entryway between the dining room and the hallway.  He observed that the canine was still breathing, still baring its teeth, and attempting to rise up off the ground with its front paws.

"**3.24**   Ultimately, the canine ceased to move and the threat had ended.  The officers alerted dispatch via the police radio that the officers had been charged by a dog and that shots had been fired.  Sgt. Keyes communicated that the dog was down, the officers were unhurt and requested an Animal Control officer to

respond.  He then ordered the officers to continue to clear the house and observed no other threats or signs of forced entry.

"**3.25**  Sgt. Keyes then retrieved his camera and a small plastic baggie to gather evidence.  He took a number of photographs of the home and the dog and collected the shell casings.  He marked the locations of the mushroom Hornady TAP rounds which lay in the hallway and marked the location of the two Hornady TAP round fragments which also lay in the hallway.

"**3.26**  The Animal Control officer, Jay Turner, pronounced the canine to be deceased.  After communication with the homeowner, it was determined that the dog should be removed from the home and the Animal Control officer removed the canine to their truck for transport to the Round Rock Police Department. They were not wanting the family to come home to the signs left behind by the canine in the hallway and had the home cleaned up.

## VI.  Complaint Is Not Sufficient

As pointed out, the Complaint does not, with adequate factual specificity, provide facts, which, if true, would penetrate the immunity of the Defendant Officers. The Complaint is not sufficient to overcome a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) because it is a collection of conclusory allegations, and ignores facts that must be addressed in the context of a seizure claim and an analysis of the immunity defense. In accordance with the Fifth Circuit's well-settled *Schultea* procedure, and in accordance with the procedure recommended by the United States Supreme Court, Plaintiff should be required to file a Reply to the specific immunity assertions. *See generally: Crawford-El v. Britton*, 523 U.S. 574, 597-598 (1998).

WHEREFORE, PREMISES CONSIDERED, Defendants pray that the Court dismiss all of the claims against Defendants, or alternatively the Court order Plaintiff to file a Rule 7(a) Reply to the immunity assertions, and that the Court stay discovery until the immunity defense is resolved.

Respectfully submitted,

**WRIGHT & GREENHILL, P.C.**
900 Congress Avenue, Suite 500
Austin, Texas 78701
512/476-4600
512/476-5382 (Fax)

By: /s/ Mike Thompson, Jr.
    Archie Carl Pierce
    State Bar No. 15991500
    cpierce@w-g.com
    Mike Thompson, Jr.
    State Bar No. 19898200
    mthompson@w-g.com
    Christopher A. Shuley
    State Bar No. 24046839
    cshuley@w-g.com
**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on this 4th day of October, 2016, a true and correct copy of the above and foregoing Motion was filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record below:

Carl J. Kolb
Carl J. Kolb, P.C.
926 Chulie Drive
San Antonio, Texas 78216

Christiana Dijkman
Christiana Dijkman, P.C.
3401 Padre Blvd., Suite E
South Padre Island, Texas 78597

    /s/ Mike Thompson, Jr.
    Mike Thompson, Jr.